IN UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MONICA RIVERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | |
| | ) | NO. 1:19-cv-1520 |
| | ) | |
| APPLE, INC. | ) | |
| | ) | |
| | ) | **JURY DEMANDED** |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, MONICA RIVERS ("RIVERS"), by and through her attorney, CYNTHIA PIETRUCHA, complains of Defendant, APPLE, INC. ("APPLE") and states as follows:

## JURISDICTION AND VENUE

1. RIVERS brings this action of intentional employment discrimination on the basis of race under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq. ("TITLE VII") and under the basis of actual and/or perceived disability and retaliation under the provisions of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. ("ADA").

2. There are federal questions involved herein, and this Court therefore has jurisdiction over this matter. Venue is proper as this is the judicial district where the unlawful employment practices arose.

3. All conditions precedent to the filing of this action have been met by RIVERS in that she has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and

has filed this action within 90 days of receiving a right-to-sue letter from the EEOC.

4. Specifically, RIVERS timely filed an EEOC Charge of Discrimination No. 440-2018-04859. A copy of the EEOC Charge of Discrimination is attached hereto and incorporated herein by reference as "Exhibit A".

5. RIVERS also received a Notice of Right to Sue ("RIGHT TO SUE") from the EEOC on December 3, 2018 and timely filed this action within 90 days of her receipt of that RIGHT TO SUE. A copy of that RIGHT TO SUE is attached hereto and incorporated herein by reference as "Exhibit B".

## PARTIES

6. RIVERS is an individual who resides in Boone County, Illinois.

7. APPLE hired RIVERS on August 10, 2015. RIVERS was an employee within the meaning of the statutes listed herein and she belongs to the class of employees protected under the statutes listed herein. She was employed but is no longer employed by the Defendant.

8. APPLE is an American multinational technology corporation with its' principal place of business in Cupertino, California, that designs, develops and sells consumer electronics, computer software and online services.

9. At all material times, APPLE was an employer as defined by the statutes listed herein.

10. APPLE is an employer who employed in excess of 500 employees and therefore is subject to suit on the statutes stated herein.

## FACTUAL ALLEGATIONS

11. RIVERS is a black, female with a voice disability.

12. APPLE hired RIVERS as a full-time at-home technical support advisor, where she worked remotely from her home.

13. RIVERS job was high-volume and her duties included but were not limited to engaging with APPLE's customers virtually and answering questions about APPLE's products, services, troubleshooting and technical support.

14. RIVERS was qualified for her job and APPLE indicated they hired her because she was smart and good at customer service.

15. At all material times, RIVERS performed her work satisfactorily.

16. By the end of 2016, RIVERS found out she had nerve damage in her larynx, which is the muscular organ that holds human vocal chords, also known as the voice box. This was painful, caused RIVERS to frequently lose her voice, and required RIVERS to seek medical treatment.

17. One of the medical treatments she received was speech therapy.

18. RIVERS' physician indicated RIVERS should switch to a non-speaking role at APPLE.

19. RIVERS' physician also recommended she undergo a brief medical leave to rest her voice, but APPLE would not allow this, nor allow her to partake in APPLE'S own paid time off policy, even though APPLE allowed non-black, non-disabled employees paid leave.

20. On October 12, 2017 RIVERS asked APPLE for a reasonable accommodation to complete her job duties by contacting APPLE'S corporate employee relations representative, CARLA WYNN ("WYNN").

21. Instead of ensuring RIVERS received the accommodation recommended by RIVERS' physician, WYNN on behalf of APPLE, gave RIVERS the runaround by doing the following:

    a) WYNN suggested RIVERS work early or split shifts with additional breaks.

    b) In November 2017, WYNN requested RIVERS submit updated medical information by December 14, 2017 or start the job search process, instead of accommodating her true medical needs.

c) WYNN ignored RIVERS' voice disability and asked RIVERS to join a voice meeting with WYNN, even though RIVERS asked for a non-voice meeting.

d) WYNN eventually indicated RIVERS was a liability to the company.

22. After RIVERS notified APPLE of her voice disability, APPLE management harassed RIVERS about her voice and made comments that she often sounded fatigued, insinuating that RIVERS was fabricating her voice disability.

23. Also, APPLE launched an investigation into RIVERS' work performance and alleged she was a poor performer, even though it was APPLE'S system that was a fault as it routinely dropped customer calls and when RIVERS informed APPLE of the issues, APPLE blamed the flawed system on a poor internet connection.

24. RIVERS protested the misconduct allegations and provided additional documentation to APPLE by providing screen shoots and other proof to disapprove her alleged misconduct.

25. Nonetheless, APPLE formally warned RIVERS of poor performance and finally terminated her on March 15, 2018.

26. Compared to non-black employees and other employees without voice disabilities, APPLE treated RIVERS worse based on her protected classes.

## COUNT I
## RACE DISCRIMINATION UNDER TITLE VII

27. RIVERS realleges paragraphs 1-26 above as if fully repleaded herein.

28. At all relevant times hereto, RIVERS race was black, which is a protected class under Title VII, and APPLE was aware of his membership in this protected class.

29. RIVERS was subjected to unequal terms and conditions of employment based on her race.

30. APPLE violated Title VII of the Civil Rights Act of 1964, as amended, by treating RIVERS less favorably than non-black employees.

31. APPLE's conduct was motivated by malice, and with reckless indifference to RIVERS's federally protected rights under Title VII.

32. As a direct and proximate cause of the unlawful and discriminatory practices alleged above, RIVERS has suffered lost compensation and other monetary benefits, lost future employment opportunities, severe emotional and psychological distress, and other damages to be proven at trial.

## COUNT II
## DISABILITY DISCRIMINATION UNDER ADA

33. RIVERS realleges paragraphs 1-26 above as if fully repleaded herein.

34. The Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq., prohibits a covered entity from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

35. RIVERS is a qualified individual with a disability as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8). At all relevant times, RIVERS was APPLE's employee or applicant, as defined by 42 U.S.C. § 12111(4).

36. APPLE is a covered entity as defined by 42 U.S.C.§ 12111(2).

37. APPLE discriminated against RIVERS in regard to advancement, discharge and other terms, conditions, and privileges of employment based on her disability or perceived disability.

38. APPLE's conduct was motivated by malice, and with reckless indifference to RIVERS' federally protected rights under the ADA.

39. As a direct and proximate cause of the unlawful and discriminatory practices alleged

above, RIVERS has suffered lost compensation and other monetary benefits, lost future employment opportunities, severe emotional and psychological distress, and other damages to be proven at trial.

## COUNT III
## FAILIRE TO REASONABLY ACCOMMOMATE DISABILITY UNDER ADA

40. RIVERS realleges paragraphs 1-26 above as if fully repleaded herein.

41. The ADA requires a covered entity to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A).

42. RIVERS is a qualified individual with a disability as defined by 42 U.S.C. § 12102(2) and 42 U.S.C. § 12111(8). At all relevant times, RIVERS was APPLE's employee or applicant, as defined by 42 U.S.C. § 12111(4).

43. APPLE is a covered entity as defined by 42 U.S.C.§ 12111(2).

44. In violation of the ADA, APPLE failed to make reasonable accommodations for RIVERS.

45. APPLE's conduct was motivated by malice, and with reckless indifference to RIVERS' federally protected rights under the ADA.

46. As a direct and proximate cause of the unlawful and discriminatory practices alleged above, RIVERS has suffered lost compensation and other monetary benefits, lost future employment opportunities, severe emotional and psychological distress, and other damages to be proven at trial.

## COUNT IV
## RETAILIATION UNDER TITLE VII AND THE ADA

47. RIVERS restates and reasserts paragraphs 1-26 above as if fully repleaded herein.

48. Management officials at APPLE were aware of RIVERS's protected activities at all

times relevant to this Complaint.

49. In retaliation, APPLE changed to the terms and conditions of RIVERS' employment, accused her of misconduct and terminated here.

50. These actions were taken by APPLE against RIVERS in retaliation for her engaging in protected activities.

51. APPLE's proffered reason for terminating RIVERS demonstrates falsity.

52. RIVERS suffered extensive damages, in that she lost her salary, benefits, future income, and reputation, as well as suffering emotional harm.

53. Because RIVERS challenged APPLE, APPLE aimed to terminate her employment.

54. APPLE's actions constitute retaliation against RIVERS within the meaning of Title VII and the ADA.

55. APPLE's conduct was motivated by malice, and with reckless indifference to RIVERS's federally protected rights under Title VII and the ADA.

56. As a direct and proximate cause of the unlawful and discriminatory practices alleged above, RIVERS has suffered lost compensation and other monetary benefits, lost future employment opportunities, severe emotional and psychological distress, and other damages to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE,** RIVERS prays for the following relief:

A. That RIVERS recover from APPLE reinstatement or front pay.

B. That RIVERS recover from APPLE lost wages and benefits.

C. That RIVERS recover from APPLE pre and post judgement interest.

D. That RIVERS recover from APPLE compensatory and consequential damages for

extreme emotional pain, suffering, inconvenience, mental anguish and other non-pecuniary losses for APPLE's conduct.

E.  That RIVERS recover punitive damages.

F.  That RIVERS recover from APPLE reasonable attorney's fees, expert witness fees and litigation costs; and

G.  That RIVERS recover from APPLE any other relief as the Court may find appropriate.

**RIVERS DEMANDS A TRIAL BY JURY.**

                                                  Respectfully submitted:

                                                  MONICA RIVERS

                                      By: _____
                                                      One of Her Attorneys

Cynthia N. Pietrucha, Esq.
2001 Buttefield Road, Suite 105
Downers Grove, IL 60515
(630) 806-8610
cpietrucha@pietruchalaw.com
ARDC # 6315653